**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BOUCHARD TRANSPORTATION CO., INC.,

                         Plaintiff,

     vs.

LAUREL SHIPPING LLC and GULF OIL LP,

                         Defendants.

No. 1:19-cv-09559 (GHW)

---

## DEFENDANT LAUREL SHIPPING LLC'S ANSWER TO THE COMPLAINT AND COUNTERCLAIM

Defendant Laurel Shipping LLC ("Laurel"), by and through its undersigned attorneys, Stroock & Stroock & Lavan LLP, as and for its answer to the Complaint (the "Complaint") filed in this action by Plaintiff Bouchard Transportation Co., Inc. ("Plaintiff"), responds and alleges as follows:

1.      The allegations of paragraph 1 of the Complaint purport to state conclusions of law to which no response is required. However, to the extent a response is required, Laurel admits that this case falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333. In all other respects, Laurel denies the allegations contained in paragraph 1 of the Complaint.

2.      Laurel denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Complaint.

3.      Laurel denies the allegations set forth in paragraph 3 of the Complaint, except states that it is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 58 Commerce Road, Stamford, Connecticut 06902.

1

4.      Laurel denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Complaint.

5.      The allegations of paragraph 5 of the Complaint purport to state a conclusion of law to which no response is required.  However, to the extent a response is required, Laurel denies the allegations set forth in paragraph 5 of the Complaint and respectfully refers the Court to the referenced agreement for the complete and accurate terms thereof.

6.      Laurel denies the allegations set forth in paragraph 6 of the Complaint, except admits that Plaintiff and Gulf Oil Limited Partnership ("Gulf") entered into a time charter agreement, effective February 6, 2014 (the "Charter Agreement"), and respectfully refers the Court to the Charter Agreement, and any amendments, addenda or extensions thereto, for the complete and accurate terms thereof.

7.      Laurel denies the allegations set forth in paragraph 7 of the Complaint and respectfully refers the Court to the Charter Agreement, and any amendments, addenda or extensions thereto, for the complete and accurate terms thereof.

8.      Laurel denies the allegations set forth in paragraph 8 of the Complaint and respectfully refers the Court to the Charter Agreement, and any amendments, addenda or extensions thereto, for the complete and accurate terms thereof.

9.      Laurel denies the allegations set forth in paragraph 9 of the Complaint and respectfully refers the Court to the Charter Agreement, and any amendments, addenda or extensions thereto, for the complete and accurate terms thereof.

10.     Laurel denies the allegations set forth in paragraph 10 of the Complaint and respectfully refers the Court to the Charter Agreement, and any amendments, addenda or extensions thereto, for the complete and accurate terms thereof.

11.     Laurel denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint.

12.     Laurel denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint.

13.     Laurel denies the allegations set forth in paragraph 13 of the Complaint, except admits that Plaintiff, Laurel and Gulf entered into an Assignment, Assumption and Amendment Agreement, entered into as of December 20, 2018 (the "Assignment Agreement"), and respectfully refers the Court to the Assignment Agreement for the complete and accurate terms thereof.

14.     Laurel denies the allegations set forth in paragraph 14 of the Complaint and respectfully refers the Court to the Assignment Agreement for the complete and accurate terms thereof.

15.     Laurel denies the allegations set forth in paragraph 15 of the Complaint.

16.     Laurel denies the allegations set forth in paragraph 16 of the Complaint.

17.     The allegations of paragraph 17 of the Complaint purport to state a conclusion of law to which no response is required.  However, to the extent a response is required, Laurel denies the allegations set forth in paragraph 17 of the Complaint.

18.     Laurel denies the allegations set forth in paragraph 18 of the Complaint.

19.     Laurel denies the allegations set forth in paragraph 19 of the Complaint.

20.     Laurel denies the allegations set forth in paragraph 20 of the Complaint.

## AFFIRMATIVE DEFENSES

Laurel asserts the following affirmative defenses and reserves the right to amend this Answer to assert other and further defenses when and if, in the course of discovery or preparation for trial, it becomes appropriate.  Laurel further incorporates by reference any

3

affirmative defense that any other defendant pleads in this action to the extent the affirmative defense applies to any claim against Laurel in whole or in part.

## FIRST DEFENSE

The claims asserted against Laurel in the Complaint fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

The claims asserted against Laurel in the Complaint are barred, in whole or in part, by the doctrines of waiver, acquiescence, and/or estoppel.

## AS AND FOR LAUREL SHIPPING LLC'S COUNTERCLAIM AGAINST BOUCHARD TRANSPORTATION CO. INC.

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaim-Plaintiff Laurel Shipping LLC ("Laurel"), by and through its undersigned attorneys, hereby alleges as follows:

## PARTIES

21.     Laurel is a limited liability company organized under the laws of Delaware with its principal place of business at 58 Commerce Road, Stamford, Connecticut 06902.

22.     Upon information and belief, Counterclaim-Defendant Bouchard Transportation Co. Inc. ("Bouchard") is a corporation organized under the laws of the state of New York with its principal place of business at 58 South Service Road, Suite 150, Melville, New York, 11747.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over Laurel's counterclaim because it falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

24.     Venue for this action is proper in this Court under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

25.     Effective February 6, 2014, Bouchard and Gulf Oil Limited Partnership ("Gulf")

entered into a time charter agreement (together with any amendments, addenda or extensions

thereto, the "Charter Agreement") under which Bouchard agreed to charter and Gulf agreed to

accept under the charter the following articulated tug and barge units (the "Vessels"): (a) Morton

S. Bouchard Jr./B. No. 210, (b) M/V Jane A. Bouchard/B. No. 225, (c) M/V Evening Star/B. No.

250, and (d) M/V Ellen S. Bouchard/B. No. 280 (which was subsequently substituted under the

Charter Agreement with M/V Ellen S. Bouchard/B. No. 284).

26.     On or about December 20, 2018, Bouchard, Laurel and Gulf entered into an

Assignment, Assumption and Amendment Agreement (the "Assignment Agreement") whereby

Gulf assigned and transferred to Laurel, and Laurel accepted, all of Gulf's right, title and interest

in, to and under the Charter Agreement, and Laurel assumed all of Gulf's duties and obligations

under the Charter Agreement arising from and after the effective date.  Bouchard consented to

the assignment and assumption set forth in the Assignment Agreement.

27.     Article 1(B) of the Charter Agreement required that the Vessels "upon delivery

into the service of Charterer and throughout the period of this Charter shall have all of her

certificates, including but not limited to all documents issued by the American Bureau of

Shipping and the United States Coast Guard, current and not extended."

28.     Pursuant to the Charter Agreement, as assigned, Laurel was required to pay

Bouchard monthly in advance for the use of the chartered Vessels, and Bouchard was required to

refund Laurel for any charter paid in advance but not earned.  Specifically, Article 3(C)

("Charter Hire") of the Charter Agreement provides, in relevant part:

> [Laurel] shall pay Hire monthly in advance for each calendar month commencing
> with the Delivery Date on a pro-rata basis for the first month, and thereafter
> continuing monthly in advance on the first day of each calendar month.  Any Hire

paid in advance and not earned shall be promptly refunded to [Laurel] by [Bouchard].

29.     Article 12(B) ("Performance") of the Charter Agreement provides, in relevant part:

> [Bouchard] warrants that for the duration of this charter the vessel will be maintained so as to be acceptable to all major oil companies, refiners and storage facilities under their vetting programs, and shall be so accepted by but not limited to BP, Shell, Sun, Chevron Texaco, Exxon-Mobil, Valero, and Citgo prior to and during the duration of this charter.  [Bouchard] to arrange for inspections as and when required, at [Bouchard]'s time and expense.  If during the term of this Charter the Vessel is rejected by a major oil company, including but not limited to, BP, Shell, Sun, Chevron Texaco, Exxon-Mobil, Valero and Citgo due to deficient or unsafe operating practices and/or equipment, then in such event, if [Laurel] has given [Bouchard] written notice thereof (the "Deficiency Notice"), and if such deficiency is not rectified within fifteen (15) days after the Deficiency Notice has been given, [Laurel] may thereafter at any time terminate this Charter. In such event, [Laurel] shall have no obligation to redeliver the Vessel at any specific port of redelivery.

30.     Article 13 ("Events of Default") of the Charter Agreement provides, in relevant part:

> In the event that [Bouchard] fails to perform an obligation under this Charter and fails to remedy or cure such default within thirty (30) days following written notice by [Laurel] to [Bouchard] of such failure …, or a failure to rectify a deficiency under Article 12(B), then in the time period set out in the relevant article, [Laurel ] may on notice to [Bouchard] and without prejudice to any remedy available under law or under this Charter terminate the Charter.  [Laurel] may exercise such right of termination at any time after the expiration of the time period provided for in this Article 13 or the time period set out in any other applicable Article by providing written notice of termination to [Bouchard].

> \* \* \* \* \*

> [Bouchard] shall have a lien on all cargoes and sub freights for any amounts due under this Contract, and [Laurel] shall have a lien on the Vessel for all monies paid in advance and not earned, for the value of fuel in bunkers, for any other amounts that may be due [Laurel] and for all claims for damages arising from any breach by [Bouchard] on this Charter

31.     During the term of the Charter Agreement, as assigned, Laurel paid Bouchard for the value of the bunker inventories of fuel oil and lube oil on board the Vessels.

6

32.     Pursuant to the Charter Agreement, Laurel paid Bouchard a total of $2,226,500.98 in advance for the Hire of the Vessels from August 1, 2019 through August 31, 2019 (the "August 2019 Hire").

33.     On July 29, 2019, Valero Marketing and Supply Company ("Valero"), a major oil company and refiner, advised Laurel that the Ellen S. Bouchard/B. No. 284 was rejected and not approved for use under Valero's vetting program because of deficient or unsafe operating practices and/or equipment.

34.     On July 29, 2019, Laurel delivered a written Deficiency Notice to Bouchard informing Bouchard of Valero's rejection of the Ellen S. Bouchard/B. No. 284 due to deficient or unsafe operating practices and/or equipment.  A copy of the Deficiency Notice is annexed as Exhibit A.

35.     On July 31, 2019, Valero advised Laurel that the M/V Jane A. Bouchard/B. No. 210 was rejected and not approved for use under Valero's vetting program because of deficient or unsafe operating practices and/or equipment.

36.     On July 31, 2019, Laurel delivered a written Deficiency Notice to Bouchard informing Bouchard of Valero's rejection of the M/V Jane A. Bouchard/B. No. 210 due to deficient or unsafe operating practices and/or equipment.  A copy of the Deficiency Notice is annexed as Exhibit B.

37.     On July 31, 2019, Motiva Enterprises LLC ("Motiva"), a major oil company and refiner, advised Laurel that the Morton S. Bouchard/B. No. 225 was rejected and not approved for use under Motiva's vetting program because of deficient or unsafe operating practices and/or equipment.

38.     On July 31, 2019, Laurel delivered a written Deficiency Notice to Bouchard informing Bouchard of Motiva's rejection of the Morton S. Bouchard/B. No. 225 due to deficient or unsafe operating practices and/or equipment.  A copy of the Deficiency Notice is annexed as Exhibit C.

39.     Apart from the Deficiency Notice with respect to the Ellen S. Bouchard/B. No. 284, in response to which Bouchard admitted that it would attempt to get the deficiency "fixed up shortly" (*see* Exhibit A), Bouchard failed to respond to the Deficiency Notices delivered by Laurel.

40.     Bouchard failed to rectify any of the noticed deficiencies with respect to Valero and Motiva's rejections of the Vessels within fifteen (15) days, as required under Article 12(B) of the Charter Agreement.

41.     On multiple occasions, Bouchard admitted that, during at least the fifteen (15) days after Laurel delivered the Deficiency Notices, Bouchard, among other deficiencies, did not have valid U.S. Coast Guard Documents of Compliance certifying that its Vessels complied with the requirements of the International Safety Management Code (the "ISM Code"), which sets the international standard for the safe management and operation of ships and for pollution prevention.

42.     Recently, on October 7, 2019, Bouchard issued a letter to its customers and partners, annexed hereto as Exhibit D, admitting that "[d]uring the past two months, Bouchard Transportation Co., Inc. has been faced with an unprecedented lifting of our Document of Compliance (DOC)," which Bouchard believes "was government overreach by the United States Coast Guard, backed by the American Bureau of Shipping with alternative motives."  Bouchard further admitted that:

Bouchard fully understood that **we were behind on paperwork and implementation of corrective action plans**, but lifting our DOC has been detrimental and is something I hope no other company has to go through.

As a result of this action, Bouchard has had several contracts cancelled, which we vividly disagree with, and continue to fight. Additionally, **we have been denied access to refineries and terminals by Valero, Motiva, Exxon, and others**. After two months of doing everything possible to rectify these matters, **we still have not been able to obtain a full term DOC**.

Exhibit D (emphasis added).

43.     This failure by Bouchard to maintain valid and current U.S. Coast Guard

Documents of Compliance, certifying compliance with the safety standards of the ISM Code,

resulted in deficient or unsafe operating practices and/or equipment under the Charter

Agreement, which Bouchard admits it has not rectified to this day.

44.     On August 18, 2019, pursuant to Articles 12(B) and 13 of the Charter Agreement,

Laurel delivered to Bouchard a written notice of termination (the "Termination Notice"),

notifying Bouchard that the Charter Agreement was terminated effective August 18, 2019.  A

copy of the Termination Notice is annexed hereto as Exhibit E.

45.     On or about August 30, 2018, Laurel delivered to Bouchard an invoice for

amounts owed by Bouchard to Laurel under the Charter Agreement, including, but not limited to,

$2,181,487.97, plus interest, owed by Bouchard for: (1) the portion of the August 2019 Hire of

the Vessels paid in advance by Laurel and not earned by Bouchard, and (2) the value of bunker

inventories of fuel oil and lube oil remaining on board the Vessels after termination.

46.     To date, Bouchard has failed to pay Laurel any of the amounts owed.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

47.     Laurel repeats and reincorporates by reference herein the allegations set forth in paragraphs 21 through 46 as if fully set forth herein.

48.     As a result of the foregoing, Bouchard has breached the Charter Agreement.

49.     As a result of Bouchard's breach of the Charter Agreement, Laurel has sustained damages in an amount to be determined at trial, but in no event less than $2,181,487.97, plus interest.

**WHEREFORE**, Laurel respectfully requests that the Court:

a)      Dismiss with prejudice the causes of action asserted against Laurel;

b)      With respect to the Counterclaim, enter judgment in favor of Laurel and against Bouchard in an amount to be determined at trial, but in no event less than $2,181,487.97, plus interest, costs and fees, including Laurel's reasonable attorney's fees; and

c)      Grant such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        November 25, 2019

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By: _____
        Melvin A. Brosterman
        Francis C. Healy
        180 Maiden Lane
        New York, NY 10038-4982
        212-806-5400

*Attorneys for Laurel Shipping LLC*